

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED
08 SEP 16 PM 2: 12

CLERK US...
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

JOSEPH NELSON SWEET and
JACK LEE MALONE

CASE NO. 8:08-Cr-381-T-24 EAJ
18 U.S.C. § 371

# INDICTMENT

The Grand Jury charges:

## COUNT ONE

### A. Introduction

At times material to this Indictment:

**The Scheme to Defraud**

1.  The defendants and others participated in a scheme that advocated the intentional and deliberate disruption of the assessment, ascertainment, and collection of federal income tax through the use of, among other things, abusive or "sham" trusts called unincorporated business trust organizations ("UBTOs"). The defendants promoted the scheme and sold it for financial gain by, among other things, falsely claiming that purchasers could legally avoid income taxes by placing their income and assets in the sham UBTOs. The defendants promoted the scheme under the auspices of two UBTOs, EDM Enterprises and the JoY Foundation. The scheme incorporated a multi-level marketing program to encourage the recruitment of additional clients. In addition, the defendants promoted the scheme by offering the services of so-called "professionals" who, for a fee, would provide the clients with opinion letters that

ostensibly supported the defendants' false claims that clients of the scheme could legally avoid income taxes by following their instructions.

2.  One of the materials utilized in the scheme was an instructional manual written by defendant JOSEPH NELSON SWEET ("defendant SWEET") entitled "GOOD NEWS for Form 1040 Filers: Your Compliance is strictly VOLUNTARY! BAD NEWS for the IRS! Everything You Ever Needed to Know About the Income Tax That the IRS is Afraid You'll Find Out" (hereinafter "Good News!"). This manual was sold for financial gain and instructed its readers how to engage in the disruption of the assessment, ascertainment and collection of federal income tax.

3.  EDM Enterprises was a UBTO that served as an alter-ego for defendant SWEET. Defendant SWEET used EDM Enterprises to sell "Good News!" and create UBTOs for clients both before and after the formation of the JoY Foundation.

4.  The JoY Foundation was a UBTO that defendant SWEET created for defendant JACK LEE MALONE ("defendant MALONE") in or about mid to late 1999. Shortly after the formation of the JoY Foundation, defendants SWEET and MALONE executed an "Exclusive Agreement" on November 4, 1999 that governed the creation, implementation and operation of the scheme through the JoY Foundation. Defendant SWEET served as the so-called "Author" for the scheme, responsible for, among other things, teaching and instructing members of the JoY Foundation and others with respect to the formation and operation of sham unincorporated business trust organizations ("UBTOs"). Defendant MALONE served as the so-called "Publisher" for the scheme, responsible for, among other things, advertising, marketing, training, publishing, as well as the distribution of materials.

5. The JoY Foundation's offices were located in Tampa, Florida. The JoY Foundation did not have a tax identification number, nor did it file tax returns. The JoY Foundation was not a tax-exempt organization. There was no record of the JoY Foundation registering with the Florida Division of Corporations.

### The Defendants

6. Defendant SWEET was a resident of Bradenton, Florida and was one of two principals in the scheme described in paragraphs 1 through 5.

7. Defendant MALONE was a resident of Tampa, Clearwater, and Spring Hill, Florida, and was the other principal in the scheme described above.

### The Government Agency

8. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury. The IRS had responsibility for the ascertainment, computation, assessment and collection of taxes, including individual income taxes.

### The February 2002 Order

9. On February 20, 2002, the Honorable Steven D. Merryday, United States District Judge for the Middle District of Florida, issued an order ("the Order") against EDM Enterprises, a trust, and JOSEPH SWEET, individually and as a trustee of EDM Enterprises, in a civil case styled United States of America, Plaintiff, v. Joseph N. Sweet and EDM Enterprises, Case No. 8:01-cv-331-T-23TGW. The Order stated that defendant SWEET and EDM Enterprises had engaged in conduct that interfered with the enforcement of the internal revenue laws, and "immediately and permanently enjoined" both defendant SWEET and EDM Enterprises, and their representatives, agents, servants, employees, attorney and others acting in concert with any of them, from, inter alia:

3

a) "Organizing, promoting, marketing, or selling the tax shelter, plan, or arrangement" entitled "Good News!" . . . or any other abusive tax shelter, plan or arrangement that incites taxpayers to attempt to violate the internal revenue laws . . .";

b) "Organizing, promoting, marketing or selling UBTOs. . ."; and,

c) "Engaging in conduct that interferes with the administration and enforcement of the internal revenue laws of the United States."

### B. The Conspiracy

10. From in or about October 1998, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of this indictment, in the Middle District of Florida, and elsewhere,

JOSEPH NELSON SWEET
and
JACK LEE MALONE,

defendants herein, did knowingly and willfully conspire, combine, confederate, and agree with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service ("IRS") of the U.S. Department of Treasury in the ascertainment, computation, assessment, and collection of federal income taxes, both with respect to JoY Foundation members and with respect to Sweet and Malone.

### C. Manner and Means of the Conspiracy

11. It was a part of the conspiracy that the defendants and others, through the auspices of the JoY Foundation and EDM Enterprises, would and did, for financial gain, prepare and market sham trusts to individuals across the United States which were intended to assist those individuals in concealing income and assets and preventing the assessment, ascertainment, and collection of taxes. The defendants instructed

individuals to: not file U.S. income tax returns; file false and fraudulent forms W-4 to negate the withholding of federal income tax; submit obstructive paperwork to the IRS; and conceal their income and assets by utilizing sham trusts.

12. It was further a part of the conspiracy that the defendants would and did, for financial gain, charge clients of the JoY Foundation varying amounts for membership in the organization, ranging from approximately $1680.00 to $2135.00. The defendants utilized a multi-level marketing approach, which provided for monetary rewards to existing JoY Foundation members who recruited new members.

13. It was further a part of the conspiracy that the defendants would and did, for financial gain, charge clients of the JoY Foundation and others up to $2500.00 for the preparation of a UBTO.

14. It was further a part of the conspiracy that the defendants would and did advise clients that after a UBTO was established, the clients should transfer assets, including residences, cars, bank accounts, and businesses, to the UBTO, and that the clients could continue to maintain dominion and control of those assets.

15. It was further a part of the conspiracy that the defendants falsely advised clients that once they created a UBTO and transferred their assets and income to the UBTO, then the client no longer was required to file a federal income tax return, Form 1040, to report the wages, salaries, business income, commissions, dividends, interest, etc., which were made payable to the UBTO.

16. It was further a part of the conspiracy that the defendants would and did make false and misleading statements and representations to agents of the Internal Revenue Service for the purpose of concealing true information relating to the operation of the JoY Foundation, the marketing of abusive tax shelters, and the income of defendants SWEET, MALONE, and others.

5

17. It was further a part of the conspiracy that the defendants and others would and did operate a website to promote and advertise the abusive trust scheme and other tax-evasion services provided by the JoY Foundation.

18. It was further a part of the conspiracy that the defendants would and did conduct conference calls with JoY Foundation members and others in which they shared their suggestions for communicating with the IRS in order to further conceal income and assets and prevent the assessment, ascertainment or collection of taxes.

19. It was further a part of the conspiracy that the defendants falsely advised others that a permanent injunction entered against defendant SWEET by the United States District Court in 2002 was of no consequence, in order to conceal the unlawful conduct of the JoY Foundation and lull JoY Foundation customers into establishing or continuing their business relationship with the JoY Foundation.

20. It was further a part of the conspiracy that the defendants would and did use a low-level employee of the JoY Foundation as the signatory on the JoY Foundation bank account in order to conceal their proprietary interest in the JoY Foundation.

21. It was further a part of the conspiracy that the defendants would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

### D. Overt Acts

22. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

1)      On or about November 4, 1999, defendants JOSEPH NELSON SWEET and JACK LEE MALONE executed an "Exclusive Agreement" that governed their respective roles for a period of ten years, in the implementation and operation of the "JoY Foundation." The agreement provided that the "Author," defendant SWEET, would teach and instruct "students on UBTO setup." The agreement further provided that the "Publisher," defendant MALONE, would be responsible for advertising, marketing, publishing and distributing JoY Foundation materials. "Appendix A" to the agreement sets forth a "compensation breakdown" which described the distribution of income among the principals and others for various fees received by the JoY Foundation from sales of memberships, formation of UBTOs, and hourly consultations and seminars.

2)      In or about late May, 2000, the defendants hosted an off-shore seminar in Aruba for JoY Foundation members to promote the JoY Foundation's unlawful scheme.

3)      On or about January 20, 2002, defendant MALONE operated a booth and participated in a conference on behalf of the JoY Foundation in a hotel in Clearwater Beach, Florida, to promote the JoY Foundation's program.

4)      On or about January 20, 2002, at the hotel in Clearwater, Florida, defendant MALONE falsely told an Undercover Agent ("UCA") posing as a potential client of JoY Foundation, that the only people who are required to file tax returns are those involved in alcohol, tobacco, firearms and a few other items.

5)      On or about January 20, 2002, defendant MALONE told the UCA that he had not filed tax returns in ten years.

6) On or about January 20, 2002, Defendant MALONE told the UCA that the cost to join the JoY Foundation was $1650.00, and that the UCA could not attend the seminar at the hotel because he was not a member of the JoY Foundation.

7) On or about January 20, 2002, Defendant MALONE offered to introduce the UCA to defendant SWEET to explain the JoY Foundation system in greater detail.

8) On or about January 23, 2002, Defendant MALONE spoke with the UCA and told him, among other things, that:

    a) "... the I.R.S. is not part of the federal government. It's a private corporation;"

    b) the JoY Foundation package materials and advice would "take care of your taxes for the rest of your life";

    c) defendant MALONE lived "in a monstrous house right now. And I got my own private pool, and I live on the 17th hole. And I've got a Jacuzzi and everything . . .";

9) On or about July 10, 2002, defendant SWEET sent the UCA an email regarding the paperwork that the UCA needed to prepare before the UCA met with SWEET to form a UBTO.

10) On or about August 27, 2002, defendant SWEET met with the UCA at SWEET's residence in Bradenton, Florida in order to finalize the UCA's UBTO. Defendant SWEET falsely told the UCA that the UCA could run the UCA's consulting fees from his business through the trust and that "earnings are not taxed, they are not the subject of tax laws." Defendant SWEET further told the UCA that the permanent injunction issued against SWEET was a "joke" and didn't require him to do anything differently than he was already doing.

11) On or about August 27, 2002, defendant SWEET created a UBTO named "Myers Protected Growth Funding" for the UCA at SWEET's residence in Bradenton, Florida.

12) On or about September 23, 2002, defendant MALONE met with the UCA at the JoY Foundation offices to enlist the UCA as a director in the JoY Foundation's multi-level marketing plan. In response to the UCA's statement that he had already paid defendant SWEET for the UBTO, defendant MALONE told the UCA that he kept nothing from SWEET and "there's nothing he keeps hidden from me."

13) On or about September 23, 2002, in response to the UCA's query about how the injunction affected the JoY Foundation, defendant MALONE stated that there was "no injunction", that a "civil action is not a federal action," and that he "minimized" the injunction and kept operating. MALONE also said he could spot an IRS agent at the JoY Foundation seminars and that he always "leases" and doesn't "buy" anything. MALONE also said that SWEET was responsible for the government losing "a whole lot more" than $6 million in revenue.

14) On or about November 9, 2002, defendant SWEET wrote a letter to a JoY Foundation client that included a sample letter to use in drafting a response to the IRS. Defendant SWEET stated in the letter that there are JoY Foundation conference calls each Monday and Thursday evening, and that "[i]nviting others to listen is a great way to introduce them to JoY!"

15) On or about November 18, 2002, defendants MALONE and SWEET caused an employee of the JoY Foundation to issue a salary check to MALONE in the amount of $1000.00 drawn on a JoY Foundation bank account.

9

16) On or about November 19, 2002, defendants MALONE and SWEET caused an employee of the JoY Foundation to issue a check to SWEET in the amount of $250.00 drawn on a JoY Foundation bank account, with a notation in the memo line of the check stating "2 members."

17) On or about November 22, 2002, defendant MALONE falsely stated to an IRS special agent that he had never provided tax advice to JoY Foundation members and that he was not trying to hide anything from the government.

17) On or about November 22, 2002, defendants MALONE and SWEET were in possession of materials at the JoY Foundation offices in Tampa, Florida, that showed they had continued to actively conduct the business of the JoY Foundation, including:

    a) JoY Foundation client lists;

    b) JoY Foundation member surveys and order forms, including numerous such forms dated after February 20, 2002;

    c) records of phone messages from individuals attempting to reach defendant SWEET for advice on IRS tax matters;

    d) JoY Foundation member files;

    e) Records of shipments of JoY Foundation materials to numerous individuals including shipments made after February 20, 2002;

    f) Records of funds (including copies of U.S. currency, certified checks, cashier's checks and money orders) deposited into JoY Foundation bank accounts, including deposits made after February 20, 2002;

g) Check registers and bank records reflecting numerous payments to MALONE and SWEET drawn on the JoY Foundation bank accounts, including payments made after February 20, 2002.

In violation of Title 18, United States Code, Section 371.

A TRUE BILL,

_____
Foreperson


ROBERT E. O'NEILL
United States Attorney

By: _____
CHERIE L. KRIGSMAN
Assistant United States Attorney

By: _____
ROBERT T. MONK
Assistant United States Attorney
Deputy Chief, General Crimes Section

By: _____
TODD A. ELLINWOOD
Trial Attorney
United States Department of Justice
Tax Division

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT

Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

JOSEPH NELSON SWEET and
JACK LEE MALONE

## INDICTMENT

Violations:

18 U.S.C. § 371

A true bill,

_____
Foreperson

Filed in open court this 16th day

of September, A.D. 2008.

_____
Clerk

Bail $_____